No. 64,565

STATE OF KANSAS, *Appellee*, v. KURT DONNELL WESSON, *Appellant*.

(802 P.2d 574)

Opinion filed December 7, 1990.

*Kevin E. Koch*, of Turner, Vader & Koch, Chtd., of Kansas City, argued the cause, and was on the brief for appellant.

*Jerome A. Gorman*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Kurt Donnell Wesson, from his convictions of felony murder (K.S.A. 1989 Supp. 21-3401) and of attempted sale of crack cocaine (K.S.A. 1989 Supp. 65-4127a).

Wesson contends that the sale, or attempted sale, of crack cocaine cannot be the underlying felony to support a charge of felony murder; that numerous errors were made concerning evidence; and that there was insufficient evidence to support a guilty verdict for attempted sale of crack cocaine and for premeditated murder. Other minor issues will be disposed of in the opinion.

Early in the morning of June 11, 1989, a Kansas City, Kansas, police officer noticed a vehicle on a sidewalk that had run into a light pole. The tires were spinning and smoking, the windshield was cracked, and the left window was broken out. Inside the vehicle the officer found Cletis Crowley slumped against the steering wheel. The officer tore open Crowley's shirt and found stab wounds on Crowley's upper chest and arms. Crowley died a short time later from one of the stab wounds, which had penetrated

his heart. An autopsy revealed that Crowley had been stabbed eight times by a single-edged instrument.

Crowley had in his possession a pipe with traces of cocaine in it. Because there was little broken glass on the ground where the car had come to rest, the officers surmised that an altercation had taken place elsewhere. They backtracked to 13th and Wood, an area where drug sales are common, and discovered newly broken auto glass on the ground and two wooden knife handle halves. Lab tests showed that the glass found at 13th and Wood was consistent with the glass from Crowley's car.

Officers arrested Kurt Wesson at 13th and Wood later that day. A lock-blade knife was recovered from his pocket with the wooden handles missing. A subsequent analysis showed that the knife handles found at the scene were originally attached to Wesson's knife.

After arrest, Wesson told the police that he was trying to sell cocaine to Crowley. He told police that there were two people in the car and that the driver reached out and grabbed the cocaine and drove away. He told the officers that as the car turned the corner, it looked like the driver was fighting with the passenger. He said he chased the car, it stopped and the passenger jumped out, and he noticed the driver had blood on his chest. He said he broke the half open window, reached in, and retrieved his cocaine. The car then drove away.

At trial, Wesson denied making the preceding statement to officers. Wesson testified that he was selling fake crack made out of soap, wax, and baking soda. He testified that when he showed a sample to Crowley, Crowley took the sample, rolled up the car window trapping Wesson's arm and the sample inside and started driving. He testified that he eventually broke the window and escaped. He testified that an acquaintance, Philip White, had given him the knife to dispose of and that he did not know who stabbed Crowley.

Officers questioned two witnesses, Philip White and Kenneth Williams, both acquaintances of Wesson. At the preliminary hearing, they testified that they were at 13th and Wood early on the 11th. They saw Wesson with the upper half of his body inside the driver's side of Crowley's car, being dragged along. They both testified they ran after the car to try and help Wesson. Both

witnesses saw Wesson hitting Crowley. White testified he saw a knife in Wesson's hand.

Both witnesses testified the car drove off after Wesson was freed. After Wesson was freed from the vehicle, White, Williams, and Wesson went to White's apartment. Both observed a knife and cuts on Wesson's hand. Both testified that Wesson admitted he stabbed Crowley. At trial, the State was unable to procure White's and Williams' attendance, and the court ultimately found them unavailable and allowed their testimony at the preliminary hearing to be introduced.

The jury found Wesson guilty and he appeals.

## I. FELONY MURDER

The second amended information charged the following:

### COUNT I

"[O]n or about the 11th day of June, 1989, one Kurt D. Wesson did unlawfully, feloniously, maliciously, willfully, deliberately and with premeditation or in the perpetration or attempt to perpetrate a felony, to-wit: possess, have under his control, possess with intent to sell, sell, or deliver a narcotic drug, kill a human being, to-wit: Cletis L. Crowley, by stabbing the said Cletis L. Crowley with a knife, in violation of K.S.A. 21-3401. (First Degree Murder, 'A' Felony).

### "COUNT II

"At the County of Wyandotte, State of Kansas, for a further, different and second count herein; Information reads that on or about the 11th day of June, 1989, one Kurt D. Wesson did unlawfully, willfully and feloniously, possess, possess with the intent to sell, sell or deliver a quantity of crack or cocaine, in violation of K.S.A. 65-4127a. (Possess, Possess with the intent to Sell, Sell, or Deliver a Narcotic Drug, 'C' Felony)."

In addition to an instruction on first-degree murder in the alternative, the jury was also instructed on the lesser included offenses of second-degree murder and voluntary manslaughter. The only instruction given concerning drug violations was on attempted sale of crack cocaine.

Prior to trial, Wesson moved to have Count I dismissed, and, at the close of the State's evidence, Wesson moved for acquittal. The trial court denied the motion, finding, in part:

"Mere possession of crack is not an inherently dangerous crime, but I am of the opinion . . . that the sale or attempted sale of crack is an inherently dangerous felony. I don't care if we view the crime in the abstract or if we

view it in reality. In reality, we know that the sale or attempted sale of dangerous drugs, narcotics is a dangerous occupation.

"We see—as courts, we see every day where people are injured and killed during the sale or attempted sale of narcotic drugs. . . .

"We know that people who sell and who buy drugs are dangerous and sometimes violent individuals, that considerable money can be present during drug transactions. . . . So whether we view it in reality or in the abstract, I am of the opinion that the sale or attempted sale of a controlled substance, and especially cocaine or hard drugs, is an inherently dangerous crime."

On appeal, Wesson renews this argument that attempted sale of narcotics (or sale of narcotics) is not inherently dangerous.

In Kansas, unlike most states, felony murder is classified as first-degree murder. Most states set out specific felonies (for example, rape, robbery, burglary, and aggravated arson) as underlying felonies sufficient for first-degree murder and then make all other felony murders second degree. The purpose of the felony-murder rule is to supply the elements of premeditation and intent that are otherwise required to establish first-degree murder. See *State v. Chism*, 243 Kan. 484, 487, 759 P.2d 105 (1988); *State v. Hoang*, 243 Kan. 40, 755 P.2d 7 (1988). Consequently, only felonies which are inherently dangerous are held to support felony murder. That the crime must be inherently dangerous has been the rule in Kansas for many years. See, *e.g.*, *State v. Roselli*, 109 Kan. 33, 198 Pac. 195 (1921). In *State v. Hoang*, the court said:

"To support a conviction for felony murder, all that is required is to prove that a felony was being committed, which felony was inherently dangerous to human life, and that the homicide which followed was a direct result of the commission of that felony. . . .

"[T]he underlying felony in a felony-murder case must be a forcible felony, one inherently dangerous to human life." *Hoang*, 243 Kan. at 42.

K.S.A. 21-3110(8) provides that forcible felonies include "treason, murder, voluntary manslaughter, rape, robbery, burglary, arson, kidnapping, aggravated battery, aggravated sodomy and any other felony which involves the use or threat of physical force or violence against any person." (Obviously, this list contains some crimes which could not support felony murder as they are lesser included offenses of felony murder.)

In determining whether a crime is inherently dangerous, the majority of states examine the circumstances of the particular incident and determine whether the way that the particular crime was committed was inherently dangerous. This previously was the law in Kansas. See *State v. Goodseal*, 220 Kan. 487, 553 P.2d 279 (1976), and *State v. Moffitt*, 199 Kan. 514, 431 P.2d 879 (1967); both overruled by *State v. Underwood*, 228 Kan. 294, 615 P.2d 153 (1980).

In *State v. Goodseal*, the court considered and expressly rejected the minority/California rule that the underlying felony is viewed only in the abstract in determining whether it is inherently dangerous. *Goodseal*, 220 Kan. at 493. However, in *State v. Underwood*, 228 Kan. at 306, this court, in a 4 to 3 vote, held that the circumstances of the commission of the felony are not to be examined—the underlying felony is to be analyzed only in the abstract. *Goodseal* and *Moffitt* were overruled.

This rule—that the underlying felony is examined in the abstract—has been stated in subsequent cases, but not always strictly followed. In *State v. Lashley*, 233 Kan. 620, 664 P.2d 1358 (1983), the court held that felony theft, by obtaining or exerting unauthorized control over property, is an inherently dangerous felony. This court added: "[W]e wish to emphasize that theft may be the underlying felony in a charge of felony murder only in cases where the discovery of the thief during the course of the theft results in the death of a person." 233 Kan. at 634. See *State v. Garner*, 237 Kan. 227, Syl. ¶ 4, 699 P.2d 468 (1985) (holding that theft by obtaining or exercising unauthorized control over property is inherently dangerous for purposes of the felony-murder rule only when the thief is discovered during the course of the attempted theft resulting in death).

Other cases, which apply the abstract analysis, are instructive in this case. In *Underwood*, this court held that unlawful possession of a firearm by a felon could not support felony murder, reasoning:

"The possession of the firearm when viewed in the abstract is not inherently dangerous to human life. This is true because it seems unlikely that mere possession, which has been defined as dominion and control over an object, and not its use, could be undertaken in so dangerous a manner that the prohibited possession would result in murder in the first degree. . . . It

appears quite impossible to find an intent in this collateral felony encompassing malice, deliberation and premeditation so as to transfer these elements to the homicide and relieve the prosecution from proof of the same." *Underwood*, 228 Kan. at 303-04.

Likewise in *State v. Brantley*, 236 Kan. 379, 691 P.2d 26 (1984), the court held that possession of a weapon in a penal institution, a class E felony, will not support felony murder.

The possession or sale (attempted or actual) of cocaine is like the unlawful possession of a weapon. There is nothing inherently violent or forcible in the sale of crack cocaine.

The State attempts to distinguish *Brantley* and *Underwood* on the basis that they involved status crimes—it is the status of the person and mere possession which determine the illegality. The State argues that drug sales, on the other hand, are active crimes and that the nature of the "seedy" locations where the sales take place and the fact that most sales are for cash and large amounts of money may be present, and combine to "create a reckless disregard of consequences and fuel that opportunity for confrontation that the Court requires."

The State's argument fails for several reasons. The intent being transferred or presumed is not recklessness—it is premeditation, malice, *etc.* The determinative factor of *Brantley* and *Underwood* was not that the crimes therein were status crimes, but that there was no active violence as a part of the crimes; no threat of violence against the persons present. The violence accompanying drug sales is coincidental rather than necessarily inherent. The emphasis in section 21-3110(8) is on crimes that are inherently violent.

Cases from other states are of little benefit in that many states classify most felony murder as second-degree murder. Many states look at the circumstances of each crime. In *People v. Patterson*, 49 Cal. 3d 615, 262 Cal. Rptr. 195, 778 P.2d 549 (1989), the California Supreme Court instructed the trial court that "a felony is inherently dangerous to life when there is a high probability that its commission will result in death." 49 Cal. 3d at 618. In California, a homicide that is a direct result of furnishing a narcotic, if that furnishing is found to be inherently dangerous, is at least second-degree felony murder. 49 Cal. 3d at 620.

The cases from other states cited by the State are not persuasive either, because of the differences in felony-murder law. In *State v. Norwood*, 721 S.W.2d 175 (Mo. App. 1986), cited by the State for the proposition that drug crimes are inherently dangerous, a police officer was shot by a codefendant during a drug raid on a residence and the Court of Appeals affirmed the second-degree felony-murder conviction based on felony possession of marijuana. It was never argued in the case that possession is not an inherently dangerous felony. At issue was only whether one codefendant was responsible for the other's acts. Missouri, unlike Kansas, has a second-degree felony-murder statute that eliminates the transferred intent problem and, thus, whether a crime is inherently dangerous is of no consequence in Missouri in a second-degree felony-murder case.

Many other states never reach the issue. They hold that there is no causal connection between the drug-related felony and the death. For instance, in *King v. Commonwealth*, 6 Va. App. 351, 368 S.E.2d 704 (1988), the court held that when an aircraft carrying drugs crashed, killing the co-pilot, the connection between the felony and the death was too remote to support a felony-murder charge.

As noted, this state has a history of requiring that the question of whether a felony is inherently dangerous to human life must be determined when considered in the abstract only. We are not urged in this case that the rule be changed.

The legislature has been aware of this rule for many years and has not seen fit to change either the felony-murder statute or the definition of a "forcible felony." We invite the legislature to consider adopting a more specific first-degree felony-murder statute and a second-degree felony-murder statute.

Viewing a "sale" of a narcotic in the abstract does not mean we use the definition of a sale contained in the Uniform Commercial Code or consider sales of legitimate items by legitimate merchants in the ordinary course of their business. What it does mean is that we consider all sales of crack cocaine and not confine ourselves to the facts of this particular sale. A sale under the Uniform Controlled Substances Act has a broader meaning than "sale" usually has. In addition to "sale's" usual meaning, it includes a gift or any offer to make a gift, a barter, or an exchange,

and it is not necessary that the prohibited substance be the property of the defendant or be in his or her physical possession. Simply put, we consider only the question whether the sale of crack cocaine, when viewed in the abstract, is inherently dangerous.

The record in this case is devoid of any evidence concerning whether the sale of crack cocaine is inherently dangerous. We are not unmindful of the cost to society of the use of illicit drugs and the cost in human tragedy. The legislature has recognized this problem and has consistently sought to control the problem with stiffer penalties and mandatory sentences. That, however, does not make the sale, when viewed in the abstract, inherently dangerous. The sale, when viewed in the abstract, takes place literally everywhere in our society and with alarming frequency. On occasions isolated sales turn violent. We can only surmise from limited knowledge of the total number of sales alleged to take place in our society that violence is only involved in an extremely small percentage of the sales of illicit drugs. We cannot say that a sale of crack cocaine, when viewed in the abstract, is inherently dangerous. See *People v. Williams*, 63 Cal. 2d 452, 47 Cal. Rptr. 7, 406 P.2d 647 (1965) (conspiracy to possess a prohibited drug was not inherently dangerous when the attempted purchaser stabbed the dealer to death). Thus, the conviction for felony murder must be reversed and remanded to the trial court for retrial as more fully set forth hereinafter.

## II. FIRST-DEGREE MURDER

In Wesson's pretrial motion to dismiss, and in the motion for acquittal, he argued that the alternative charge against defendant for premeditated murder should be dismissed for lack of evidence. By virtue of our holding that sale of cocaine cannot be the underlying felony for first-degree felony murder, a question arises as to whether the defendant can be retried for first degree murder and any applicable lesser included offense.

In *In re Habeas Corpus Petition of Lucas*, 246 Kan. 486, 789 P.2d 1157 (1990), the petitioner's original conviction of felony murder was subsequently reversed. See *State v. Lucas*, 243 Kan. 462, 759 P.2d 90 (1988), *aff'd* 244 Kan. 193, 767 P.2d 1308 (1989). Lucas was subsequently charged with second-degree murder.

Prior to trial, he filed a habeas corpus petition, arguing that the retrial would put him in double jeopardy and the charge was also precluded by res judicata.

This court analyzed how the jury was instructed. It noted that the jury was told that Lucas could be found guilty on any of the four degrees of homicide and, in the case of reasonable doubt as to which offense, he could only be found guilty of the lesser. 246 Kan. at 489. This court held that by finding Lucas guilty of first-degree murder the jury did not adjudicate Lucas not guilty of second-degree murder.

Here, we are presented with a different question. Premeditated murder and felony murder are both alternate theories to prove first-degree murder. The jury was instructed that it could convict Wesson on either theory and if the jury had a "reasonable doubt as to the guilt of the defendant as to the crime of murder in the first degree on either theory, then [it] must consider whether the defendant is guilty of murder in the second degree or voluntary manslaughter."

Finding Wesson guilty of felony murder did not adjudicate him not guilty of premeditated murder. Felony murder and premeditated murder, as instructed in this case, are not mutually exclusive. The theory behind felony murder is that the premeditation, malice, *etc.*, is transferred from the underlying felony, so the State does not have to prove premeditation. Perhaps the jury just felt that the felony murder was a slightly stronger case than premeditated murder, but that there was proof beyond a reasonable doubt for both. We simply do not know. All that can be said is that it is not implicit in the verdict that Wesson was found not guilty of premeditated murder. A subsequent prosecution for premeditated murder and appropriate lesser included offenses is not precluded by double jeopardy in this case.

The appellate standard of review for motions for judgment of acquittal has previously been set forth:

"In ruling on a motion for judgment of acquittal, if a trial judge concludes from the evidence that a reasonable mind might fairly decide a defendant is guilty beyond a reasonable doubt, the motion must be denied and the case must go to the jury. [Citation omitted.] On appeal, the reviewing court must decide whether a rational factfinder could have found the accused

guilty beyond a reasonable doubt." *State v. Crichton*, 13 Kan. App. 2d 213, 218-19, 766 P.2d 832 (1988), *rev. denied* 244 Kan. 739 (1989).

Wesson used a deadly weapon. Although premeditation is not presumed from use of a deadly weapon, the use of a deadly weapon may be considered along with other evidence to support a conviction for premeditated murder. See *State v. Hill*, 233 Kan. 648, 652, 664 P.2d 840 (1983).

The evidence could also be interpreted to show that Wesson chased after Crowley's car, giving Wesson time to think about his actions. There was a valid jury question on premeditation.

### III. ABSENT WITNESSES

Wesson next challenges the admission of the preliminary hearing transcript testimony of White and Williams. Wesson makes two arguments. He argues that he was unable to effectively cross-examine the witnesses at the preliminary hearing because his counsel did not have a copy of the witnesses' statements with him. Wesson's counsel states in his brief that he had seen the statements but did not have a copy of the statements at that time.

Wesson also argues that it was simply unfair to admit the testimony, as it denied the jury the opportunity to formulate an opinion as to the credibility and veracity of the witnesses. Wesson does not challenge the court's finding that the witnesses were unavailable.

K.S.A. 1989 Supp. 60-460 sets forth the general hearsay rule: "Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except" (certain exceptions which are discussed below). The Sixth Amendment to the United States Constitution (made applicable to the States through the Fourteenth Amendment) provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The same right is guaranteed by the Kansas Constitution, Bill of Rights, § 10.

Wesson's second argument—it is simply unfair to admit the transcript—ignores any exceptions to the Sixth Amendment requirement and to the hearsay rule. K.S.A. 1989 Supp. 60-460(c)(2)

provides that, if the trial court finds a declarant is unavailable as a witness at a hearing, testimony given as a witness in another action or in a preliminary hearing or former trial in the same action may be used, except such testimony may not be used in criminal actions if it denies the accused the right to meet the witness face to face.

And, there is a similar exception to the Sixth Amendment right:

"In cases of necessity, it is generally held that the right of confrontation under the Sixth Amendment and Section 10 of the Kansas Bill of Rights is satisfied if the accused has been once confronted by the witness against him in any stage of the proceedings on the same accusation and has had an opportunity of cross-examination." *State v. Ruebke,* 240 Kan. 493, 517, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987).

Where a witness is unavailable, the Sixth Amendment permits introduction of the preliminary examination testimony of a witness. *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980); *State v. Lashley,* 233 Kan. 620, 627-28, 664 P.2d 1358 (1983). Certainly, it is preferable to have live witness testimony, but despite Wesson's contentions, unavailability is a valid exception to the hearsay rule and the Sixth Amendment.

Here, Wesson argues that he was denied effective cross-examination because he did not have the witnesses' statements at the preliminary hearing. At the preliminary hearing, Wesson did not object that he did not have the witnesses' statements. The statements themselves are not in the record. It is impossible to determine their impeachment value. It is also impossible to determine why Wesson's counsel did not have the statements at the preliminary hearing. Wesson's counsel told the court that he had seen the statements.

In *Ohio v. Roberts,* the Supreme Court said, "[T]he opportunity to cross-examine at the preliminary hearing—even absent actual cross-examination—satisfies the Confrontation Clause." 448 U.S. at 70. Here, the State did not deny Wesson access to the statements—counsel had seen them. Additionally, there has been no showing that absence of the statements was harmful in any way to Wesson—no showing that they would have helped him. Based on the record before us, it is impossible to say that Wesson was denied effective opportunity for confrontation of the witnesses.

## IV. ADMISSION OF EVIDENCE OF
## PRIOR CRIMES OF A WITNESS.

At trial, Beryl Preston testified for the defense. His testimony tended to corroborate that of Wesson and discredit that of White and Williams. During its cross-examination of Preston, the State attempted to introduce evidence that Preston had been in the same jail cell with Wesson prior to trial in order to show that he was biased in favor of Wesson. Wesson argued that the State was, in effect, attacking Preston's credibility on the basis of a crime with which he had been charged with but not convicted. The State argued that it just wanted to show that the two men had been in the same cell together.

The court held that the State could ask Preston if he had been in jail with Wesson, but only if the State asked about the nature of the least serious crime for which Preston was being held— misuse of a credit card. The court felt that this would lessen any unfair prejudicial impact and prevent the jury from speculating about the nature of the crime of which Preston was accused. Preston was also accused of more serious crimes, but the court did not allow the State to question him about these.

Wesson's statement of the law is correct. K.S.A. 60-421 provides: "Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility." In *State v. Handley*, 234 Kan. 454, 460, 673 P.2d 1155 (1983), the court held that "K.S.A. 60-421 specifically requires a conviction before the crime is admissible *for that purpose*." (Emphasis supplied.) See *State v. Lomax & Williams*, 227 Kan. 651, 655, 608 P.2d 959 (1980).

Wesson's application of this correct statement of law, to the facts of this case, is not correct. The State was trying to show bias on Preston's behalf. K.S.A. 60-420 provides: "Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility." Here, it was not the crime Preston was charged with that the State was concerned with, it was the fact that he had been in the same

jail cell as Wesson. The court allowed the State to inquire about the charge in order to minimize any unwarranted conclusions on the part of the jury. This evidence was not prohibited by K.S.A. 60-421, and it was within the court's discretion to admit it.

## V. SUFFICIENCY OF EVIDENCE

Wesson also argues that there is insufficient evidence to convict him of attempted sale of cocaine.

"When the sufficiency of evidence is challenged, the standard of review on appeal is whether after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Graham*, 247 Kan. 388, Syl. ¶ 5, 799 P.2d 1003 (1990).

At trial, a police officer testified that Wesson told him that he was selling crack cocaine. The area where the incident occurred is known for being an area where drug trafficking occurs. Both White and Williams testified that they saw Wesson approach Crowley's car, and they saw Wesson reach inside. Williams heard Wesson tell Crowley to give him the money. Wesson later told Williams that "the dude tried to snatch his stuff" and that Williams assumed this to mean drugs.

When considered in the light most favorable to the prosecution, this evidence is such that a rational factfinder could have found Wesson guilty beyond a reasonable doubt.

## VI. VERDICT FORM

Wesson next argues that the verdict form violated his presumption of innocence because, for each of the crimes charged, the "guilty" blank preceded the "not guilty" blank. Wesson did object to the form at trial, and the court overruled the objection.

Wesson cites no authority for his argument and our research discloses none. A defendant is presumed innocent and the jury is so instructed. The purpose of a trial is to determine if the accused is guilty. We see no prejudice to the accused and, in any event, instruction 16 would cure any possibility of error. Instruction 16 reads, in pertinent part:

"The State has the burden of proving the defendant is guilty. The defendant is not required to prove he is not guilty. You must assume the defendant is not guilty unless the evidence convinces you of the defendant's guilt."

The remaining issues raised by the accused are moot in view of our decision concerning the felony-murder charge.

Affirmed in part, reversed in part, and remanded for a new trial.