PER CURIAM.
The petitioner, Oronde Kenyatt Mitchell, filed a petition for a writ of prohibition/mandamus directing Judge Truman Hobbs of the Montgomery Circuit Court to dismiss the felony-murder charges against him. In June 2004, a Montgomery County grand jury indicted Mitchell for felony murder.[1] The predicate felony named in *1095 the indictment was the unlawful distribution of a controlled substance. Mitchell moved to dismiss the felony-murder charge because, he argued, the underlying felony was not “clearly dangerous to human life.” The circuit court denied the motion; this extraordinary petition followed.
Initially, we note that the proper vehicle by which to challenge a void indictment is by way of a petition for a writ of habeas corpus. As the Alabama Supreme Court stated in Fourment v. State, 155 Ala. 109, 112, 46 So. 266, 267 (1908):
“Where one is in custody which is predicated upon an assumed and exercised judicial jurisdiction of matter or person that it is asserted did not legally exist, habeas corpus is the remedy to institute an investigation of the exist[e]nce of such jurisdiction; an inquiry very different from one involving the merely erroneous or irregular exercise of existent jurisdiction. Code 1896, § 4838; Ex parte Sam, 51 Ala. 34 [ (1824) ]; City of Selma v. Till, 42 South. 405 [ (Ala.1906) ]; Church on Habeas corpus, §§ 356, 352.”
“The Attorney General recognizes the controlling principles that habeas corpus is the appropriate remedy where the indictment charges no offense .... ” Barbee v. State, 417 So.2d 611, 612 (Ala.Crim.App. 1982). “The writ [of habeas corpus] is against void but not irregular or voidable judgments.” Hable v. State, 41 Ala.App. 398, 399, 132 So.2d 271, 272 (1961). See also Greer v. State, 49 Ala.App. 36, 268 So.2d 502 (1972); Parham v. State, 285 Ala. 334, 231 So.2d 899 (1970); Nations v. State, 41 Ala.App. 581, 141 So.2d 537 (1962); State v. Baker, 268 Ala. 410, 108 So.2d 361 (1959).
Because Mitchell’s argument, if meritorious, would render the indictment void, the proper method by which to challenge his claim is a petition for a writ of habeas corpus. “This Court has stated that it is ‘committed to the proposition that it will treat a motion (or other pleading) and its assigned grounds according to its substance.’” Ex parte Deramus, 882 So.2d 875, 876 (Ala.2002). Accordingly, we treat this extraordinary petition as a petition for a writ of habeas corpus. See Ex parte Frost, 848 So.2d 1021 (Ala.Crim.App.2002) (court treated petition for a writ of mandamus as petition for a writ of habeas corpus).
Felony murder is defined in § 13A-6-2, Ala.Code 1975:
“(a) A person commits the crime of murder if:
[[Image here]]
“(3) He commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, or any other felony dearly dangerous to human life and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person.”
(Emphasis added.)
Mitchell argues that Count I of the two-count indictment fails to charge a crime and is void; therefore, he argues, the circuit court has no jurisdiction to proceed on the charges. Specifically, he argues that the predicate felony named in the indictment — the unlawful distribution of a controlled substance — is not a felony recognized under § 13A-6-2(a)(3), Ala. *1096 Code 1975, because it is not “clearly dangerous to human life.” Count I of the indictment charged:
“The Grand Jury of said County charge that, before the finding of this indictment, Oronde Kenyatt Mitchell, whose name is otherwise unknown to the Grand Jury, did commit or attempt to commit a felony clearly dangerous to human life, to-wit: unlawful distribution of a controlled substance, to wit: marijuana, and, in the course of and in furtherance of the said felony that the said Mitchell was committing or attempting to commit, or in immediate flight therefrom, the said Mitchell or another participant, to-wit: Jaquin Deaudrey Jones, whose name is otherwise unknown to the Grand Jury, caused the death of another person, to-wit: Cedric Tolbert, whose name is otherwise unknown to the Grand Jury, by shooting the said Tol-bert with a pistol, in violation of Section 13A-6-2 of the Code of Alabama, against the peace and dignity of the State of Alabama.”[2]
Mitchell also argues that other states have held that only offenses that are “inherently dangerous” can constitute the predicate felony for felony murder. He cites Minnesota v. Anderson, 666 N.W.2d 696 (Minn.2003); Kansas v. Wesson, 247 Kan. 639, 802 P.2d 574 (1990); People v. Taylor, 6 Cal.App.4th 1084, 8 Cal.Rptr.2d 439 (1992), in support of his assertion. In essence, Mitchell argues that we should follow the abstract approach used by Minnesota, Kansas, and California when determining whether the unlawful distribution of a controlled substance is a felony that is “clearly dangerous to human life.”
The State asserts that distributing controlled substances is a felony that is clearly dangerous to human life. Alternatively, it asserts that whether the charge of distributing controlled substances meets the statutory definition of “clearly dangerous to human life” should be decided on a case-by-case basis based on the facts in each case.
The issue presented in this petition is an issue of first impression in Alabama. Because there is no Alabama law on this issue, we have looked to other states for guidance.
In State v. Mora, 124 N.M. 346, 950 P.2d 789 (1997),[3] the New Mexico Supreme Court, considering whether criminal sexual contact of a minor could support a felony-murder charge, stated:
“In [State v.] Harrison, [90 N.M. 439, 564 P.2d 1321 (1977) ], this Court considered two approaches in determining whether a felony is inherently dangerous for felony murder purposes. Id. Under the first approach, ‘the felony is examined in the abstract to determine whether it is inherently dangerous to human life.’ Id. See, e.g., People v. Lee, 234 Cal.App.3d 1214, 286 Cal.Rptr. 117, 122 (1991); State v. Wesson, 247 Kan. 639, 802 P.2d 574, 579 (1990) superseded by statute as stated in State v. Mitchell, 262 Kan. 687, 942 P.2d 1, 5 (1997). This ‘abstract approach’ analyzes the elements of the underlying felony without regard to the particular facts of the case. Lee, 286 Cal.Rptr. at 122. The *1097 abstract approach involves a two-step process by which the court first examines the ‘primary element’ of the offense at issue to determine whether it involves the requisite danger to life. Id. The court then looks to the ‘factors elevating the offense to a felony’ to determine whether the felony, taken in the abstract, is inherently dangerous to human life. Id. Thus, under the abstract approach, the court decides as a matter of law whether a particular felony is inherently dangerous to human life.
“Under the second possible approach cited by Harrison, ‘both the nature of the felony and the circumstances surrounding its commission may be considered to determine whether it was inherently dangerous to human life.’ 90 N.M. at 442, 564 P.2d at 1324. Some courts have used this factual approach to determine inherent danger for purposes of felony murder. See, e.g., State v. Noren, 125 Wis.2d 204, 371 N.W.2d 381, 385 (Wis.App.1985); State v. Stewart, 663 A.2d 912, 919-920 (R.I.1995). When applying the factual approach, a court looks to the particular facts of the ease to decide whether the defendant carried out the predicate felony in a manner dangerous to human life. Thus, a proscribed offense which on its face does not appear to be a dangerous felony, may be carried out in a manner which would allow it to serve as a predicate felony for felony murder. Noren, 371 N.W.2d at 385.
“In Harrison, this Court adopted the factual approach. 90 N.M. at 442, 564 P.2d at 1324. We see no reason to deviate from that ruling today. We cannot say as a matter of law whether a particular felony is or is not inherently dangerous to human life. This decision is necessarily fact-specific. We cannot say as a matter of law that criminal sexual contact of a minor is never an inherently dangerous felony. As stated in Harrison, it is for the jury to decide, subject to appellate review, whether a felony is inherently dangerous. Id. In this case, it was for the jury to decide whether the facts of the case warranted a conclusion that the criminal sexual contact of a minor was committed under inherently dangerous circumstances.”
124 N.M. at 353-54, 950 P.2d at 796-97.
The Rhode Island Supreme Court in State v. Stewart, 663 A.2d 912, 916 (R.I. 1995), considered whether “permitting a child to be a habitual sufferer” was an “inherently dangerous felony” sufficient to support a charge of felony murder in the second degree.[4] The Rhode Island Supreme Court stated:
“In advancing her argument, defendant urges this court to adopt the approach used by California courts to determine if a felony is inherently dangerous. This approach requires that the court consider the elements of the felony ‘in the abstract’ rather than look at the particular facts of the case under consideration. See, e.g., People v. Patterson, 49 Cal.3d 615, 620-21, 778 P.2d 549, 553, 262 Cal. Rptr. 195, 199 (1989). With such an approach, if a statute can be violated in a manner that does not endanger human life, then the felony is not inherently *1098 dangerous to human life. People v. Burroughs, 35 Cal.3d 824, 830-33, 678 P.2d 894, 898-900, 201 Cal.Rptr. 319, 323-25 (1984); People v. Caffero, 207 Cal.App.3d 678, 683-84, 255 Cal.Rptr. 22, 25 (1989). Moreover, the California Supreme Court has defined an act as ‘inherently dangerous to human life when there is “a high probability that it will result in death.” ’ Patterson, 49 Cal.3d at 627, 262 Cal.Rptr. at 204, 778 P.2d at 558.
“In Caffero, supra, a two-and-one-half-week-old baby died of a massive bacterial infection caused by lack of proper hygiene that was due to parental neglect. The parents were charged with second-degree felony murder and felony-child abuse, with the felony-child-abuse charge serving as the predicate felony to the second-degree-murder charge. Examining California’s felony-child-abuse statute in the abstract, instead of looking at the particular facts of the case, the court held that because the statute could be violated in ways that did not endanger human life, felony-child abuse was not inherently dangerous to human life. Caffero, 207 Cal. App.3d at 683, 255 Cal.Rptr. at 25. By way of example, the court noted that a fractured limb, which comes within the ambit of the felony-child-abuse statute, is unlikely to endanger the life of an infant, much less of a seventeen-year-old. Id. (the statute applied to all minors below the age of eighteen years, not only to young children. People v. Lee, 234 Cal.App.3d 1214, 1228, 286 Cal. Rptr. 117, 126 (1991)). Because felony-child abuse was not inherently dangerous to human life, it could not properly serve as a predicate felony to a charge of second-degree felony murder. Caffero, 207 Cal.App.3d at 682-83, 255 Cal. Rptr. at 24-25; see also Lee, 234 Cal. App.3d at 1229, 286 Cal.Rptr. at 126.
“The defendant urges this court to adopt the method of analysis employed by California courts to determine if a felony is inherently dangerous to life. Aside from California, it appears that Kansas is the only other state which looks at the elements of a felony in the abstract to determine if such felony is inherently dangerous to life. See, e.g., State v. Wesson, 247 Kan. 639, 647, 802 P.2d 574, 581 (1990) (holding that the sale of crack cocaine when viewed in the abstract is not inherently dangerous to human life); State v. Underwood, 228 Kan. 294, 303, 615 P.2d 153, 161 (1980) (holding that the unlawful possession of a firearm by an ex-felon when viewed in the abstract is not inherently dangerous to human life). The case of Ford v. State, 262 Ga. 602, 423 S.E.2d 255 (1992), cited in defendant’s brief for the proposition that possession of a firearm by an ex-felon is not an inherently dangerous felony which can support a felony-murder conviction, actually holds that the attendant circumstances of the particular case should be considered in determining whether the underlying felony “create[d] a foreseeable risk of death.’ In Ford the defendant (Ford) had previously been convicted of the felony of possession of cocaine with intent to distribute. Ford was visiting the home of his girlfriend’s mother and had brought with him a semiautomatic pistol. While there he attempted to unload the pistol, but in so doing, he discharged the weapon, sending a bullet both through the floor and through the ceiling of a basement apartment located in the house. The bullet struck and killed the occupant of the basement apartment. There was no evidence that at the time of the shooting the defendant was aware of the existence of the apartment or of the victim’s presence in it. Ford was *1099 charged with and convicted of felony murder, with the underlying felony being the possession of a firearm by a convicted felon.
“The Georgia Supreme Court reversed the conviction for felony murder holding that a status felony, including the possession of a firearm by a previously-convicted felon, is not inherently dangerous. The court explained that there could indeed be circumstances in which such a felony could be considered dangerous (for example when the possession of the firearm was coupled with an aggravated assault or other dangerous felony) but that such circumstances were absent in that case. It held that in that particular case, which did not involve an assault or other criminal conduct, the underlying felony of possession of a firearm by a previously convicted felon was not inherently dangerous and thus could not serve as a predicate to the charge of felony murder. Id. at 603-04, 423 S.E.2d at 256.
“We decline defendant’s invitation to adopt the California approach in determining whether a felony is inherently dangerous to life and thus capable of serving as a predicate to a charge of second-degree felony murder. We believe that the better approach is for the trier of fact to consider the facts and circumstances of the particular case to determine if such felony was inherently dangerous in the manner and the circumstances in which it was committed, rather than have a court make the determination by viewing the elements of a felony in the abstract. We now join a number of states that have adopted this approach. See, e.g., Jenkins v. State, 230 A.2d 262 (Del.1967); State v. Wallace, 333 A.2d 72 (Me.1975); Commonwealth v. Ortiz, 408 Mass. 463, 560 N.E.2d 698 (1990); State v. Harrison, 90 N.M. 439, 564 P.2d 1321 (1977); State v. Nunn, 297 N.W.2d 752 (Minn.1980).
“A number of felonies at first glance would not appear to present an inherent danger to human life but may in fact be committed in such a manner as to be inherently dangerous to life. The crime of escape from a penal facility is an example of such a crime. On its face, the crime of escape is not inherently dangerous to human life. But escape may be committed or attempted to be committed in a manner wherein human life is put in danger. Indeed in State v. Miller, [52 R.I. 440, 161 A. 222 (1932) ], this court upheld the defendant’s conviction of second-degree murder on the basis of the underlying felony of escape when a prison guard was killed by an accomplice of the defendant during an attempted escape from the Rhode Island State prison. By way of contrast, the California Supreme Court has held that the crime of escape, viewed in the abstract, is an offense that is not inherently dangerous to human life and thus cannot support a second-degree felony-murder conviction. People v. Lopez, 6 Cal.3d 45, 51, 489 P.2d 1372, 1376, 98 Cal.Rptr. 44, 48 (1971) (In Bank).”
663 A.2d at 918-19. See also Smith v. State, 596 N.W.2d 661, 664 (Minn.Ct.App. 1999) (“[W]e conclude the postconviction court misinterpreted the statute and abused its discretion by concluding a sale of cocaine that results in a shooting death was an invalid predicate felony for second-degree felony murder.”); Malaske v. State, 89 P.3d 1116, 1117 n. 2 (Okla.Crim.App. 2004); (“[T]he act of ... trafficking in illegal drugs may serve as [a] predicate crime[] for first-degree felony murder.”); Jenkins v. State, 230 A.2d 262, 269 (Del. 1967) (‘Whether the commission of a particular felony in a given instance was fore-seeably dangerous is for the court and jury to decide.”); State v. Wallace, 333 A.2d 72, 81 (Me.1975) (“To summarize, the felony- *1100 murder rule in Maine requires in addition to a causal relationship between the felony being committed, or attempted, and the death, proof beyond a reasonable doubt that the manner or method of its commission, or attempted commission, presents a serious threat to human life or is likely to cause serious bodily harm.”).
Our research revealed little law to support Mitchell’s argument that Alabama should use an abstract approach in determining whether the crime of unlawful distribution of a controlled substance is “clearly dangerous to human life.” Though states define the predicate offense to felony murder differently — “an act greatly dangerous to the lives of others,” or “an inherently dangerous felony” — they appear to be in agreement in their approach to analyzing whether the offense fits within the felony-murder law.
Mitchell cites State v. Anderson, 666 N.W.2d 696, 701 (Minn.2003), for the proposition that the Minnesota Supreme Court has held that, viewed in the abstract, the offense of “a felon in possession of a firearm” can never be a predicate felony for felony murder. However, the Minnesota Supreme Court also noted that Minnesota law “requires consideration of the elements of the underlying felony in the abstract and the circumstances under which the felony was committed.” 666 N.W.2d at 700-01 (footnote omitted).
Mitchell also relies on the case of State v. Wesson, 247 Kan. 639, 802 P.2d 574 (1990). In Wesson, the Kansas Supreme Court held that the sale of cocaine could never be a predicate felony for felony murder in Kansas. However, the Kansas Supreme Court in State v. Mitchell, 262 Kan. 687, 942 P.2d 1 (1997), stated the following concerning posUWesson Kansas law:
“The legislative overhaul of the felony-murder statute in 1992 requires us to reexamine the reasoning applied in Wesson and the ‘abstract approach’ announced in State v. Underwood, 228 Kan. 294, 306, 615 P.2d 153 (1980). If the felony sale of cocaine is viewed in the abstract, as it was in Wesson, then it does not fit within the catchall definition of a forcible felony. The elements of that crime do not involve any threat or use of physical force or violence against any person, although threat, force, or violence may frequently be involved in cocaine sales on the street. Courts no longer have the task of determining whether a crime is inherently dangerous. K.S.A. 21-3436 addressed our concern, expressed in [State v.] Lashley, 233 Kan. [620] at 631, 664 P.2d 1358 [ (1983) ], that overextension of the felony-murder doctrine had to be guarded against. Either the crime fits within one of the K.S.A. 21-3436 categories or it does not. Comparison of the crime to those listed in K.S.A. 21-3110(8) (definition of forcible felony), or to the catchall portion of the definition, is no longer required. In determining whether sale of cocaine is a forcible felony, we find consideration of the circumstances of the commission of the crime, in addition to the elements of the crime in the abstract, appropriate because the legislature has determined a cocaine sale to be inherently dangerous.
[[Image here]]
“The significant changes to the felony-murder statute after Wesson, with the legislature having expressly defined sale of cocaine as an inherently dangerous felony, justify reconsideration of our reasoning in Wesson. The abstract approach, first taken in Underwood, is not controlling in the determination of whether a felony is forcible because the legislature has now statutorily defined inherently dangerous felonies.”
262 Kan. at 695-96, 942 P.2d at 6.
Mitchell also cites People v. Taylor, 6 Cal.App.4th 1084, 8 Cal.Rptr.2d 439 (1992). *1101 The California Court of Appeals in Taylor held that, viewed in the abstract, the sale of phencyclidine (“PCP”) could never be a predicate felony for felony murder. The holding in Taylor is still followed in California. See People v. Clem, 78 Cal.App.4th 346, 92 Cal.Rptr.2d 727 (2000).
We believe that the fact-based approach is the more logical approach and is consistent with the evolution of the offense of felony murder in Alabama. Alabama originally separated murder into degrees. First-degree murder was defined in § 13-1-70, Ala.Code 1975 (replaced by § 13A-5-40). Section 13-1-70, Ala.Code 1975, provided, in part:
“Every homicide perpetrated by poison, lying in wait or any other kind of wilful, deliberate, malicious and premeditated killing; or committed in the perpetration of, or the attempt to perpetrate, any arson, rape, robbery or burglary ... is murder in the first degree...."[5]
In 1977, the Alabama criminal code was totally rewritten. Murder was no longer separated into degrees, and felony murder was defined in § 13A-6-2(a)(3), Ala.Code 1975. The legislature also increased the number of felonies that could serve as the basis for felony murder and added the additional proviso to § 13A-6-2(a)(3): “or any other felony clearly dangerous to human life .... ”
Based on the evolution of felony murder in Alabama and the overwhelming consensus that a fact-based approach should be used to determine whether an offense can furnish the predicate felony for felony murder, we join the majority of jurisdictions that have considered this issue. We agree with the Rhode Island Supreme Court: “[T]he better approach is for the trier of fact to consider the facts and circumstances of the particular case to determine if such felony was inherently dangerous in the manner and the circumstances in which it was committed ....” State v. Stewart, 663 A.2d at 919.
Accordingly, the indictment issued by the Montgomery County grand jury is not void. This petition is due to be, and is hereby, denied.
PETITION DENIED.
McMILLAN, P.J., and COBB, BASCHAB, SHAW, and WISE, JJ., concur.

. The Montgomery County district attorney’s office recused itself from the case. The case is being prosecuted by the attorney general.

. In this case it appears that Mitchell and the victim, Cedric Tolbert, were in a vehicle attempting to sell marijuana to Jaquin Deau-drey Jones when Jones attempted to rob Mitchell and Tolbert with a gun.

. New Mexico defines felony murder in N.M. Stat. Ann. § 30-2-l.A (Michie 1978), to include a murder committed "in the commission of or an attempt to commit any felony; or ... by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life.”

. The state of Rhode Island defines murder in degrees. Murder in the first degree is defined as a murder committed during the course of specific enumerated felonies. One of the felonies enumerated in R.I. Gen. Laws § 11-23-1 (1956), is the felony manufacture, sale, or delivery of a controlled substance. If the felony is not enumerated in R.I. Gen. Laws § 11-23-1 (1956), then the murder is murder in the second degree. To serve as the predicate felony for murder in the second degree the felony must be an "inherently dangerous felony.”

. "The criminal code repealed Section 13 — 1— 70 of the 1975 Alabama Code defining the degrees of murder. Under the criminal code the degrees of murder are abolished and homicide is divided into murder, manslaughter and criminally negligent homicide. Sections 13A-6-2, -3, -4. However, the capital offense defined in Section 13-5-31(a)(7) [repealed and replaced by § 13A-5-40(a)(7) ] retains the crime of murder in the first degree as a component of that capital offense despite the fact that there is no crime of murder in the first degree defined by the criminal code.” Williams v. State, 461 So.2d 834, 838 (Ala. Crim.App.1983), rev'd on other grounds, 461 So.2d 852 (Ala.), on remand, 461 So.2d 855 (Ala.Crim.App. 1984).