JOINER, Judge.
Ramiro Delreal Contreras was convicted of felony murder, see § 13A-6-2(a)(3), Ala.Code 1975, as a lesser-included offense of capital murder.[1] Contreras was sentenced to 50 years' imprisonment and was ordered to pay court costs and a $50 crime-victims-compensation assessment. We affirm.
On the morning of May 2, 2012, Vanessa Zapata got ready for work and briefly saw her four-year-old daughter Ava, who was eating breakfast. Zapata left for work sometime before 9:00 a.m., leaving Ava in the care of her boyfriend Contreras.
At trial, Zapata testified that around 1:30 p.m., she came home during her lunch hour and found that Ava had vomited on herself. Zapata bathed Ava and went back to work. When she returned home, Zapata found Ava lying on her bedroom floor. It appeared to Zapata that "[Ava] was starting to get sick. She didn't seem as energetic or interested in anything." Ava eventually went to bed without eating. At some point, Ava woke up and called out to Zapata. Zapata carried Ava to the bathroom because Zapata thought that Ava was going to vomit again. Ava passed out and hit her head on the floor. Zapata telephoned emergency 911 and Ava was transported to East Alabama Medical Center in Opelika.
At some point, Ava was airlifted to Children's Hospital in Birmingham. After multiple surgeries, it was discovered that Ava suffered from an intestinal injury that was uncommon for her age group. As a result of her injury, Ava was removed from life support, and she later died. Her body was then transported to the Alabama Department of Forensic Sciences.
An autopsy was performed on Ava by Dr. Steven Dunton, the senior State Medical Examiner and pathologist. Dr. Dunton testified that Ava died from brain swelling following complications of an abdominal injury caused by blunt-force trauma. Ava had a laceration on her liver, and her small intestine had been severed into two pieces, causing internal bleeding. Dr. Dunton determined that a blunt, "impaling" object crushed the intestine between the object and the spine causing it to tear and burst.
Contreras gave a statement to police, which was read into evidence. (R. 724.) According to his statement, Contreras was playing with Ava and another child in the living room about 10:00 a.m. when, Contreras said, he "accidentally" kicked Ava in the stomach. Contreras described the kick as "more of a sweeping motion with [his] leg." Contreras stated that the first time that Ava got sick was about 1:30 p.m. when Zapata came home for lunch.
*339 Contreras admitted that he did not tell anyone what had happened.
On appeal, Contreras argues that the circuit court erred by instructing the jury, over his objection, on felony murder predicated on the underlying felony of aggravated child abuse. Relying on Barnett v. State, 783 So.2d 927 (Ala.Crim.App.2000), Contreras argues that aggravated child abuse merges with the homicide and, thus, cannot serve as the underlying felony for a felony-murder charge.
"It has long been the law in Alabama that a [circuit] court has broad discretion in formulating jury instructions, provided those instructions are accurate reflections of the law and facts of the case." Barrett v. State, 33 So.3d 1287, 1288 (Ala.Crim.App.2009) (citing Culpepper v. State, 827 So.2d 883, 885 (Ala.Crim.App.2001) ).
At all times relevant to this case, § 13A-6-2(a)(3), Ala.Code 1975, provided:
"A person commits the crime of murder if he or she does any of the following:
"....
"(3) He or she commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of any person."[2]
(Emphasis added.) As noted, Contreras's felony-murder conviction is predicated on aggravated child abuse under § 26-15-3.1, Ala.Code 1975.
Section 26-15-3.1 provides: "A responsible person, as defined in Section 26-15-2, commits the crime of aggravated child abuse if he or she ... violates the provisions of Section 26-15-3 which causes serious physical injury, as defined in Section 13A-1-2, to the child." A responsible person is defined as "[a] child's natural parent, stepparent, adoptive parent, legal guardian, custodian, or any other person who has the permanent or temporary care or custody or responsibility for the supervision of a child." § 26-15-2, Ala.Code 1975. A person violates Section 26-15-3, Ala.Code 1975, if he or she "torture[s], willfully abuse[s], cruelly beat[s], or otherwise willfully maltreat[s] any child under the age of 18 years." Finally, a serious physical injury is defined as a "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ." § 13A-1-2, Ala.Code 1975.
Under the version of § 13A-6-2(a)(3) in effect at the time of Contreras's trial, aggravated child abuse was not specifically included as a predicate felony.[3] In Washington v. State, 214 So.3d 1225 (Ala.Crim.App.2015), however, this Court noted:
"[T]his Court, in Ex parte Mitchell, 936 So.2d 1094 (Ala.Crim.App.2006), first considered the breadth of the felony-clearly-dangerous-to-human-life element of felony murder when an unenumerated felony underlies that charge. This Court recognized that in 1977 the legislature 'increased the number of felonies *340 that could serve as the basis for felony murder and added the additional proviso to § 13A-6-2(a)(3) : "or any other felony clearly dangerous to human life...." ' Id. at 1101. This Court adopted a 'fact-based approach' to determine if a felony is 'clearly dangerous to human life.' Id. Under that approach, ' "the trier of fact [is] to consider the facts and circumstances of the particular case to determine if such felony was inherently dangerous in the manner and the circumstances in which it was committed...." ' Ex parte Mitchell, 936 So.2d 1094, 1101 (Ala.Crim.App.2006) (quoting State v. Stewart, 663 A.2d 912, 919 (R.I.1995) ).
"Under this Court's decision in Mitchell, 936 So.2d at 1101, a person commits felony murder under § 13A-6-2(a)(3), Ala.Code 1975, if that person or another participant in the crime causes the death of any person during the commission of an enumerated felony or during the commission of an unenumerated 'felony [that was committed in a manner that was] clearly dangerous to human life.' § 13A-6-2(a)(3), Ala.Code 1975. The fact that a felony is not enumerated in § 13A-6-2(a)(3), Ala.Code 1975, does not preclude its use to support a felony-murder conviction, provided the finder of fact determines that the underlying felony was 'clearly dangerous to human life.' See Mitchell, 936 So.2d at 1101."
214 So.3d at 1229.
In the present case, the evidence presented was sufficient for the jury to have found that four-year-old Ava died from complications of an abdominal injury, i.e., a severed intestine, as a result of having been cruelly or otherwise willfully kicked by Contreras-her caregiver-or struck with a blunt, "impaling" object in the stomach. Additionally, the jury had before it evidence indicating that, after Contreras injured Ava, he failed to tell anyone about it. Thus, a reasonable jury could have found that, under the circumstances of this case, Contreras committed aggravated child abuse and that it was a felony clearly dangerous to human life. Washington, supra.
As noted above, however, Contreras argues that the merger doctrine, as delineated in Barnett, prohibits the use of aggravated child abuse as the underlying felony for felony murder. In Barnett, this Court held that "felonious assaults that result in the victim's death merge with the homicide and therefore cannot serve as an underlying felony for purposes of the felony-murder rule." In so holding, this Court explained:
"In People v. Ireland, 70 Cal.2d 522, 450 P.2d 580, 75 Cal.Rptr. 188 (Cal.1969), the Supreme Court of California addressed whether assault with a deadly weapon could constitute the predicate felony for a felony-murder charge. The appellant in Ireland shot and killed his wife. During the trial, the trial court instructed the jury that it could convict Ireland of felony murder if it determined that he committed the underlying felony of assault with a deadly weapon. Id. In discussing this issue, the Supreme Court of California stated:
" 'We have concluded that the utilization of the felony-murder rule in circumstances such as those before us extends the operation of that rule "beyond any rational function it is designed to serve." ( People v. Washington (1965) 62 Cal.2d 777, 783, 44 Cal.Rptr. 442, 446, 402 P.2d 130, 134.) To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault-a *341 category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged.'
"....
"Conceived in the nineteenth century, the merger doctrine bars the use of the felony-murder rule when the underlying felony directly results in, or is an integral part of, the homicide. See State v. Strauch, 239 Kan. 203, 718 P.2d 613 (1986), and Note, The Merger Doctrine as a Limitation on the Felony-Murder Rule: A Balance of Criminal Law Principles, 13 Wake Forest L.Rev. 369, 377 (1977). Thus, under the merger doctrine, the elements of the underlying felony must be independent of the homicide. See Lafave & Scott, supra, Criminal Law § 7.5 at 622. We believe that the California Supreme Court's rationale in [ People v.] Ireland [, 70 Cal.2d 522, 450 P.2d 580, 75 Cal.Rptr. 188 (Cal.1969),] is sound and that the 'merger doctrine' should be applied in felony-murder cases in which the underlying felony is the assault that results in the victim's death.
"To read the 'clearly dangerous to human life' language in the felony-murder rule as allowing an assault on the homicide victim to be the predicate felony for felony murder would offend the statutory construction of Alabama's homicide laws. The Legislature has defined those acts that constitute murder as well as those acts that constitute manslaughter. See §§ 13A-6-2 and 13A-6-3, Ala.Code 1975. If prosecutors could prove murder by proving the intent element of assault as opposed to the requisite mens rea for murder or manslaughter, §§ 13A-6-2(a)(1) and (2), 13A-6-2(b), and 13A-6-3, Ala.Code 1975 would effectively be eliminated. Clearly, such a result would be contrary to legislative intent."
Barnett, 783 So.2d at 930 ; see also Smith v. State, 908 So.2d 273 (Ala.Crim.App.2000).
Thus, under Barnett, the critical inquiry is whether "the elements of the underlying felony [are] independent of the homicide." 783 So.2d at 930. In the case of "assault on [a] homicide victim," Barnett held that the answer to that inquiry was no. Here, Contreras argues that "[o]ther than the age of the victim, there is no difference in causing death by means of blunt force trauma to distinguish aggravated child abuse from felonious assault of an adult." In essence, Contreras argues that the elements of aggravated child abuse are not independent of the homicide. See Barnett, 783 So.2d 927. We disagree.
In Barnett, this Court determined that first-degree assault, see § 13A-6-20, Ala.Code 1975, differed from the charged offense only in the respect that it involved a less serious injury. In other words, if the merger doctrine had not applied in Barnett, the State would have been able to prove murder simply by showing that the defendant had the intent to cause a serious physical injury. It was this kind of "bootstrapping" that this Court in Barnett wanted to avoid. See Barnett, 783 So.2d 927, 929 (Ala.Crim.App.2000).
Aggravated child abuse, however, requires proof of two elements that are independent of the underlying homicide. First, as noted by Contreras, the State must prove that the victim was under the age of 18 years.
*342 § 26-15-3.1, Ala.Code 1975. Second, the State must prove that the accused was a "responsible person" in relation to the child-i.e., a "natural parent, stepparent, adoptive parent, legal guardian, custodian, or any other person who has the permanent or temporary care or custody or responsibility for the supervision of [the] child." § 26-15-2, Ala.Code 1975.
The second independent element listed above-proving that the accused was a "responsible person"-distinguishes this case further from a case involving assault as described in Barnett. Our caselaw has recognized the integral nature of the "responsible-person" element of child abuse and aggravated child abuse. Because of the unique relationship to the child victim, a responsible person is prohibited from both acts of commission and omission. See, e.g., Woods v. State, 724 So.2d 40 (Ala.Crim.App.1997) (recognizing that the "willful maltreatment" element of child abuse in § 26-15-3 prohibits a "responsible person" from willfully refusing to obtain medical care for an injured child the person is responsible for); see also Graham v. State, 210 So.3d 1148 (Ala.Crim.App.2016). Thus, the aggravated-child-abuse statute-in addition to prohibiting Contreras from causing serious physical injury to Ava-prohibited him from failing to disclose that Ava was seriously injured.
Under the facts of this case, the elements of aggravated child abuse are sufficiently independent from the homicide, and the merger doctrine announced in Barnett does not apply. Accordingly, the circuit court did not err by instructing the jury on felony murder based on aggravated child abuse as a lesser-included offense of capital murder.
The judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and BURKE, J., concur.
WELCH, J., dissents, with opinion, which KELLUM, J., joins.
The majority affirms Ramiro Delreal Contreras's conviction for felony murder predicated on the underlying felony of aggravated child abuse. I dissent.
Contreras acknowledged that he kicked his girlfriend's four-year-old daughter, and autopsy results indicated that the child died following complications from the abdominal injuries she sustained as a result of the kick. The State requested that the trial court instruct the jury on felony murder with aggravated child abuse as the underlying felony. Over Contreras's strenuous objections, the trial court so instructed the jury. Contreras argues on appeal, as he did at trial, that a conviction for felony murder violated the merger doctrine because, he says, the aggravated child abuse merged with the homicide and could not serve as a predicate felony and that, therefore, a felony-murder instruction was not warranted.
Section 13A-6-2(a)(3), Ala.Code 1975, defines "felony murder," as follows:
"[A] person commits the crime of felony murder if he or she ...
"... commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another *343 participant if there be any, causes the death of any person."
As the majority correctly notes, aggravated child abuse was not specifically included as a predicate felony in the version of § 13A-6-2(a)(3) in effect at the time of Contreras's trial.[4] However, as the majority also notes, it is well settled in Alabama law that a person can be convicted of felony murder based on an unenumerated underlying felony "provided the finder of fact determines that the underlying felony was 'clearly dangerous to human life.' " Washington v. State, 214 So.3d 1225 (Ala.Crim.App.2015), citing and relying on Ex parte Mitchell, 936 So.2d 1094 (Ala.Crim.App.2006).
Contreras's assertion that the aggravated child abuse merged with the homicide and could not serve as a predicate felony is fully supported by our decision in Barnett v. State, 783 So.2d 927 (Ala.Crim.App.2000), in which we held "that felonious assaults that result in the victim's death merge with the homicide and therefore cannot serve as an underlying felony for purposes of the felony-murder rule." Id. at 930.
The majority quotes extensively from this Court's opinion in Barnett, including the following:
" '[U]nder the merger doctrine, the elements of the underlying felony must be independent of the homicide....
" 'To read the "clearly dangerous to human life" language in the felony-murder rule as allowing an assault on the homicide victim to be the predicate felony for felony murder would offend the statutory construction of Alabama's homicide laws....' "
257 So.3d at 350 (quoting Barnett, 783 So.2d at 930 ).
Barnett also says:
"[a]n examination of Alabama's murder and manslaughter statutes indicates to this Court that the Legislature did not intend for felonious assaults that result in the victim's death to serve as the underlying felony in a felony-murder charge."
783 So.2d at 930.
We relied on Barnett in Smith v. State, 908 So.2d 273 (Ala.Crim.App.2000), a capital case in which the appellant had been convicted of murder for pecuniary or other valuable consideration, § 13A-5-40(a)(7), Ala.Code 1975. We stated:
"Smith argues that the trial court erred in its instruction on felony murder. Smith's felony-murder charge was based on the underlying felony of assault in the first degree. Though neither party raised the issue, we note that this Court recently held that 'felonious assaults that result in the victim's death merge with the homicide and therefore cannot serve as an underlying felony for purposes of the felony-murder rule.' Barnett v. State, 783 So.2d 927, 930 (Ala.Crim.App.2000). Thus, as a matter of law Smith could not be convicted of felony murder."
Id. at 296.
The majority states that a reasonable jury could have found that the aggravated child abuse perpetrated by Contreras was a felony clearly dangerous to human life and that the trial court did not err when it charged the jury on felony murder predicated on that felony. Although I do not disagree that a reasonable jury could have found that Contreras committed aggravated child abuse, I nonetheless disagree with *344 the majority's affirmance of the felony-murder conviction. The majority appears to attempt to distinguish this case from Barnett in order to sidestep the fundamental holding of Barnett that "felonious assaults that result in the victim's death merge with the homicide and therefore cannot serve as an underlying felony for purposes of the felony-murder rule." 783 So.2d at 930.
The majority's attempt to distinguish Barnett is based on an isolated sentence from that case. The majority states, "Thus, under Barnett, the critical inquiry is whether 'the elements of the underlying felony [are] independent of the homicide.' " 257 So.3d at 351. Relying on that isolated sentence, the majority attempts to distinguish this case from Barnett by stating that aggravated child abuse "requires proof of two elements that are independent of the underlying homicide." 257 So.3d at 351. The majority states that the two elements of aggravated child abuse that are independent of the homicide are that the victim was under the age of 18 years, § 26-15-3.1, Ala.Code 1975; and that the accused was a "responsible person" in relation to the child, § 26-15-2, Ala.Code 1975.
I disagree with the majority on several of the foregoing points. First, the legal issue before us is whether the underlying felony merges into the homicide, so there is no "underlying homicide," as the majority suggests. Second, I disagree with the majority's identification of the "critical inquiry" based on Barnett. Third, even considering the majority's argument regarding the elements of aggravated child abuse in light of the "underlying homicide," the purported distinctions do not affect the application of the merger doctrine in this case.
The sentence in Barnett regarding the elements of the underlying felony that the majority cites and relies on as the basis of its decision here is but a mention within an extensive discussion of the legal analysis that supported our holding in Barnett. The majority, itself, quotes extensively from that discussion, and I do so here to illustrate one of the reasons I disagree with the majority's analysis and holding. In Barnett, we stated:
"In People v. Ireland, 70 Cal.2d 522, 450 P.2d 580, 75 Cal.Rptr. 188 (Cal.1969), the Supreme Court of California addressed whether assault with a deadly weapon could constitute the predicate felony for a felony-murder charge. The appellant in Ireland shot and killed his wife. During the trial, the trial court instructed the jury that it could convict Ireland of felony murder if it determined that he committed the underlying felony of assault with a deadly weapon. Id. In discussing this issue, the Supreme Court of California stated:
" 'We have concluded that the utilization of the felony-murder rule in circumstances such as those before us extends the operation of that rule "beyond any rational function it is designed to serve." ( People v. Washington (1965) 62 Cal.2d 777, 783, 44 Cal.Rptr. 442, 446, 402 P.2d 130, 134.) To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault-a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged.'
*345 "....
"Conceived in the nineteenth century, the merger doctrine bars the use of the felony-murder rule when the underlying felony directly results in, or is an integral part of, the homicide. See State v. Strauch, 239 Kan. 203, 718 P.2d 613 (1986), and Note, The Merger Doctrine as a Limitation on the Felony-Murder Rule: A Balance of Criminal Law Principles, 13 Wake Forest L.Rev. 369, 377 (1977). Thus, under the merger doctrine, the elements of the underlying felony must be independent of the homicide. See [W. Lafave & A. Scott, Jr., Criminal Law § 7.5 at 622 (1986) ]. We believe that the California Supreme Court's rationale in [ People v.] Ireland [, 70 Cal.2d 522, 450 P.2d 580, 75 Cal.Rptr. 188 (Cal.1969),] is sound and that the 'merger doctrine' should be applied in felony-murder cases in which the underlying felony is the assault that results in the victim's death.
"To read the 'clearly dangerous to human life' language in the felony-murder rule as allowing an assault on the homicide victim to be the predicate felony for felony murder would offend the statutory construction of Alabama's homicide laws."
Barnett, 783 So.2d at 929-30, quoted in Contreras , 257 So.3d at 350.
Thus, contrary to the majority's assertion, the critical inquiry here is whether the aggravated child abuse-the underlying felony-directly resulted in or was an integral part of the homicide. The facts of this case clearly indicate that Contreras's acts of child abuse directly resulted in the homicide and, under Barnett, the merger doctrine applied and prohibited a conviction for felony-murder. Therefore, the trial court erred in instructing the jury on felony-murder.
Furthermore, the age of the victim and the status of the perpetrator are both relevant as elements of the crime of aggravated child abuse, but they have no impact on whether the merger doctrine applies. The majority's focus on those elements is misplaced. The elements of an underlying assault that merges into a homicide are often distinct from the elements of the homicide, as a review of the cases cited in Barnett readily reveals. For example, in People v. Ireland, supra, and in State v. Essman, 98 Ariz. 228, 403 P.2d 540 (1965), the underlying felony was assault with a deadly weapon; in Sullinger v. State, 675 P.2d 472, 473 (Okla.Crim.App.1984), an assault on a corrections officer that resulted in the officer's death was the underlying felony that merged into the homicide.
The majority's focus on whether the elements of aggravated child abuse were independent of the homicide not only misses the point of Barnett, but it also results in the kind of "bootstrapping" identified in Ireland that, the Ireland court said, "finds support neither in logic nor in law." Barnett, 783 So.2d at 929 (quoting Ireland, 70 Cal.2d at 529, 450 P.2d at 590, 75 Cal.Rptr. at 198 ). Therefore, the majority's holding, that "the elements of aggravated child abuse are sufficiently independent from the homicide, and the merger doctrine announced in Barnett does not apply," 257 So.3d at 353, and that the trial court committed no error when it instructed the jury on felony murder, is incorrect on both points.
The trial court erred when it instructed the jury on felony murder, and Contreras's conviction should be reversed.
For the foregoing reasons, I respectfully dissent.
KELLUM, J., concurs.

On August 27, 2012, a Lee County grand jury indicted Contreras for capital murder, see § 13A-5-40(a)(15), Ala.Code 1975; Contreras was convicted of the lesser-included offense of felony murder, see § 13A-6-2(a)(3), Ala.Code 1975.

Effective May 1, 2016, § 13A-6-2(a)(3), Ala.Code 1975, was amended to include, as an enumerated felony, "aggravated child abuse under Section 26-15-3.1."

It now is; see supra note 2.

As the majority also notes, § 13A-6-2(a)(3), Ala.Code 1975, was amended in 2016 to include aggravated child abuse as an enumerated felony.