PER CURIAM.
The writ of certiorari is quashed.
In quashing the writ of certiorari, this Court does not wish to be understood as approving all the language, reasons, or statements of law in the Court of Criminal Appeals' opinion. Horsley v. Horsley, 291 Ala. 782, 280 So.2d 155 (1973).
WRIT QUASHED.
Stuart, C.J., and Parker, Main, Wise, Bryan, and Sellers, JJ., concur.
Shaw, J., concurs specially.
Murdock, J., dissents.
I concur to quash the writ of certiorari issued in this case.
The facts of this case are thoroughly discussed in the Court of Criminal Appeals' opinion in Contreras v. State, 257 So.3d 337 (Ala. Crim. App. 2016), and in Justice Murdock's dissent. For the purposes of this writing, it is sufficient to note that the defendant, Ramiro Delreal Contreras, was accused of killing the four-year-old daughter of his girlfriend. Specifically, the child suffered an abdominal injury caused by blunt-force trauma that resulted in a lacerated liver and the severing of her small intestine, which ultimately resulted in her death.
Contreras was convicted under Ala. Code 1975, § 13A-6-2(a)(3), of felony murder. The version of that Code section applicable at the time of trial in this case stated:[1]
"(a) A person commits the crime of murder if he or she does any of the following:
"....
"(3) He or she commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of any person."
(Emphasis added.) The "other felony" underlying Contreras's conviction was predicated on the crime of aggravated child *347 abuse set out in Ala. Code 1975, § 26-15-3.1 : "A responsible person, as defined in [ Ala. Code 1975, §] 26-15-2, commits the crime of aggravated child abuse if he or she ... violates the provisions of Section 26-15-3 which causes serious physical injury ... to the child." A responsible person is defined as "[a] child's natural parent, stepparent, adoptive parent, legal guardian, custodian, or any other person who has the permanent or temporary care or custody or responsibility for the supervision of a child." Ala. Code 1975, § 26-15-2. A person violates Ala. Code 1975, § 26-15-3, if he or she "torture[s], willfully abuse[s], cruelly beat[s], or otherwise willfully maltreat[s] any child under the age of 18 years."
On appeal before the Court of Criminal Appeals, Contreras challenged his felony-murder conviction on the basis that, under the "merger doctrine" explained in Barnett v. State, 783 So.2d 927 (Ala. Crim. App. 2000), aggravated child abuse could not serve as the underlying felony for purposes of a felony-murder conviction. Barnett explains the merger doctrine as follows:
" 'We have concluded that the utilization of the felony-murder rule in circumstances such as those before us[, a felonious assault,] extends the operation of [the felony-murder] rule "beyond any rational function it is designed to serve." ( People v. Washington (1965) 62 Cal. 2d 777, 783, 44 Cal.Rptr. 442, 446, 402 P.2d 130, 134.) To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault-a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law.' "
Barnett, 783 So.2d at 929 (quoting People v. Ireland, 70 Cal. 2d 522, 529, 450 P.2d 580, 590, 75 Cal.Rptr. 188, 198 (1969) ). The court in Barnett reasoned that, if the State could convict a defendant for murder or manslaughter merely by proving the requisite intent for assault, as opposed to the requisite intent for murder or manslaughter, then the Code sections establishing the crimes of murder and manslaughter would essentially be eliminated, a result the legislature did not intend. See 783 So.2d at 930 ("If prosecutors could prove murder by proving the intent element of assault as opposed to the requisite mens rea for murder or manslaughter, §§ 13A-6-2(a)(1) and (2), 13A-6-2(b), and 13A-6-3, Ala. Code 1975[,] would effectively be eliminated. Clearly, such a result would be contrary to legislative intent."). Further, the Barnett court expressed its belief that the legislature could not have intended such an absurd and harsh result. Id.
Although not discussed in Barnett, a holding that the language of § 13A-6-2(a)(3) created an absurd result, in my opinion, would be a prerequisite to rejecting the plain language of the statute and resorting to construing the statute in an effort to determine the legislative intent. Specifically, the "intent" of the legislature is expressed in the language of a statute. When the language is plain and unambiguous, then that language must be enforced as written to put that "intent" into effect.
" 'The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and *348 the clearly expressed intent of the legislature must be given effect.'
" IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). See also Ex parte T.B., 698 So.2d 127, 130 (Ala. 1997), and Ex parte Ankrom, 152 So.3d 397, 431 (Ala. 2013) (Shaw, J., concurring in part and concurring in the result) (stating that when '[t]he language of [a] Code section is clear[,] there is nothing to construe [and] no need to attempt to divine the "intent" of the legislature')....[2]
"_____________
"[2] The purpose of the plain-meaning rule-to give effect to the legislature's words when determining its intent-is rooted in the doctrine of separation of powers: 'To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.' DeKalb Cty. LP Gas Co., Inc. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala. 1998)."
Ex parte N.B., 222 So.3d 1160, 1160-61 (Ala. 2016) (Shaw, J., concurring specially). Additionally, we can depart from the literal meaning of a statute when applying the literal meaning would "produce an absurd and unjust result." City of Bessemer v. McClain, 957 So.2d 1061, 1075 (Ala. 2006). A rule of statutory construction-in this case, the merger doctrine[2] -cannot be used to deviate from the plain language of a statute unless that language is ambiguous or would create an absurd result. Only then could a court resort to statutory construction-in this case, application of the merger doctrine.
This Court has never applied the merger doctrine to a case in which aggravated child abuse serves as the underlying offense for felony murder. As noted above, felony murder exists where one "commits or attempts to commit ... any ... felony clearly dangerous to human life and ... causes the death of any person." § 13A-6-2(a)(3). The aggravated child abuse in this case was certainly a "felony clearly dangerous to human life," and it resulted in the child's death. Under the plain language of § 13A-6-2(a)(3), Contreras's crime constituted felony murder. We must hold that this result is absurd or unjust in order to apply the merger doctrine and deviate from the plain language of the felony-murder statute. I do not believe that the result in this case is either absurd or unjust.
As noted above in Barnett, applying the merger doctrine to allow a conviction for felony murder when the underlying felony is an assault would largely eviscerate the crime of murder: every murder could be prosecuted as a felony murder that occurred during an assault because virtually every murder includes an attempt to cause serious physical injury (a felonious assault). But that is not the case here: Allowing a conviction for felony murder when the underlying felony is aggravated child abuse would have a very limited impact. Only the killings of certain people-children-by certain people-"responsible persons"-would be impacted. The mens rea element of murder would not be eliminated in virtually all killings. The legislature is free to eliminate the mens rea for particular killings; in other felony-murder cases, the jury does not consider the mens rea element of murder. Further, to say that it is absurd or illogical to eliminate consideration of the murder mens rea when a child dies as a result of aggravated *349 child abuse flies in the face of the current statute that now explicitly lists that crime as an applicable underlying felony. Specifically, in 2016, the legislature amended the felony-murder statute to specify that aggravated child abuse is an underlying felony for felony-murder purposes. There can be no doubt that the legislature has eliminated consideration of the mens rea necessary for a conviction of murder in these situations. Thus, the merger doctrine now has no rational application in such cases. See, e.g., State v. Sturdivant, 94 So.3d 434, 440 (Fla. 2012) (holding that when the legislature has explicitly stated that a particular felony is a predicate felony for felony murder, the merger doctrine does not apply).
Because the applicable version of § 13A-6-2(a)(3) was not ambiguous and its application in this case not absurd, I do not believe that the separation-of-powers doctrine allows it to be construed through application of the merger doctrine. Therefore, although I do not necessarily agree with the rationale of the Court of Criminal Appeals, I agree with its decision to affirm Contreras's conviction, and I concur to quash the writ of certiorari.
For the reasons set forth below, I respectfully dissent from this Court's decision to quash the writ in this case.
Ramiro Delreal Contreras was tried for capital murder and was convicted of the lesser-included offense of felony murder, see Ala. Code 1975, § 13A-6-2(a)(3). The felony-murder conviction was predicated on the offense of aggravated child abuse, see Ala. Code 1975, § 26-15-3.1.[3]
The Court of Criminal Appeals affirmed Contreras's conviction and sentence. Contreras v. State, [Ms. CR-14-0980, July 8, 2016] --- So.3d ---- (Ala. Crim. App. 2016). This Court granted certiorari review as to a question of first impression: Whether the "merger doctrine," as recognized in Barnett v. State, 783 So.2d 927 (Ala. Crim. App. 2000), applies to preclude a conviction for felony murder that is predicated on the underlying offense of aggravated child abuse. Today, this Court quashes the writ. I dissent from the decision to quash the writ.
On appeal to the Court of Criminal Appeals, Contreras contended that the trial court had erred in instructing the jury on the lesser-included offense of felony murder based on the predicate felony of aggravated child abuse. Contreras argued that, under Barnett, the offense of aggravated child abuse merged with the homicide and thus could not serve as the predicate felony for a felony-murder conviction.
The Court of Criminal Appeals, in an opinion authored by Judge Joiner, affirmed the trial court's judgment. 257 So.3d at 342. Presiding Judge Windom and Judge Burke concurred. Judge Welch dissented, with an opinion, which Judge Kellum joined.
In his well reasoned dissenting opinion, Judge Welch stated:
*350 "The majority affirms Ramiro Delreal Contreras's conviction for felony murder predicated on the underlying felony of aggravated child abuse. I dissent.
"Contreras acknowledged that he kicked his girlfriend's four-year-old daughter, and autopsy results indicated that the child died following complications from the abdominal injuries she sustained as a result of the kick. The State requested that the trial court instruct the jury on felony murder with aggravated child abuse as the underlying felony. Over Contreras's strenuous objections, the trial court so instructed the jury. Contreras argues on appeal, as he did at trial, that a conviction for felony murder violated the merger doctrine because, he says, the aggravated child abuse merged with the homicide and could not serve as a predicate felony and that, therefore, a felony-murder instruction was not warranted.
"....
"As the majority correctly notes, aggravated child abuse was not specifically included as a predicate felony in the version of § 13A-6-2(a)(3) in effect at the time of Contreras's trial. However, as the majority also notes, it is well settled in Alabama law that a person can be convicted of felony murder based on an unenumerated underlying felony 'provided the finder of fact determines that the underlying felony was "clearly dangerous to human life." ' Washington v. State, 214 So.3d 1225, 1229 (Ala. Crim. App. 2015), citing and relying on Ex parte Mitchell, 936 So.2d 1094 (Ala. Crim. App. 2006).
"Contreras's assertion that the aggravated child abuse merged with the homicide and could not serve as a predicate felony is fully supported by our decision in Barnett v. State, 783 So.2d 927 (Ala. Crim. App. 2000), in which we held 'that felonious assaults that result in the victim's death merge with the homicide and therefore cannot serve as an underlying felony for purposes of the felony-murder rule.' Id. at 930.
"The majority quotes extensively from this Court's opinion in Barnett, including the following:
" ' "[U]nder the merger doctrine, the elements of the underlying felony must be independent of the homicide....
" ' "To read the 'clearly dangerous to human life' language in the felony-murder rule as allowing an assault on the homicide victim to be the predicate felony for felony murder would offend the statutory construction of Alabama's homicide laws...." '
" 257 So.3d at 341 (quoting Barnett, 783 So.2d at 930 ).
" Barnett also says:
" '[a]n examination of Alabama's murder and manslaughter statutes indicates to this Court that the Legislature did not intend for felonious assaults that result in the victim's death to serve as the underlying felony in a felony-murder charge.'
" 783 So.2d at 930.
"We relied on Barnett in Smith v. State, 908 So.2d 273 (Ala. Crim. App. 2000), a capital case in which the appellant had been convicted of murder for pecuniary or other valuable consideration, § 13A-5-40(a)(7), Ala. Code 1975. We stated:
" 'Smith argues that the trial court erred in its instruction on felony murder. Smith's felony-murder charge was based on the underlying felony of assault in the first degree. Though neither party raised the issue, we note that this Court recently held that "felonious assaults that result in the victim's death merge with the homicide *351 and therefore cannot serve as an underlying felony for purposes of the felony-murder rule." Barnett v. State, 783 So.2d 927, 930 (Ala. Crim. App. 2000). Thus, as a matter of law Smith could not be convicted of felony murder.'
" Id. at 296.
"The majority states that a reasonable jury could have found that the aggravated child abuse perpetrated by Contreras was a felony clearly dangerous to human life and that the trial court did not err when it charged the jury on felony murder predicated on that felony. Although I do not disagree that a reasonable jury could have found that Contreras committed aggravated child abuse, I nonetheless disagree with the majority's affirmance of the felony-murder conviction. The majority appears to attempt to distinguish this case from Barnett in order to sidestep the fundamental holding of Barnett that 'felonious assaults that result in the victim's death merge with the homicide and therefore cannot serve as an underlying felony for purposes of the felony-murder rule.' 783 So.2d at 930.
"The majority's attempt to distinguish Barnett is based on an isolated sentence from that case. The majority states, 'Thus, under Barnett , the critical inquiry is whether "the elements of the underlying felony [are] independent of the homicide." ' 257 So.3d at 341. Relying on that isolated sentence, the majority attempts to distinguish this case from Barnett by stating that aggravated child abuse 'requires proof of two elements that are independent of the underlying homicide.' 257 So.3d at 341. The majority states that the two elements of aggravated child abuse that are independent of the homicide are that the victim was under the age of 18 years, § 26-15-3.1, Ala. Code 1975; and that the accused was a 'responsible person' in relation to the child, § 26-15-2, Ala. Code 1975.
"I disagree with the majority on several of the foregoing points. First, the legal issue before us is whether the underlying felony merges into the homicide, so there is no 'underlying homicide,' as the majority suggests. Second, I disagree with the majority's identification of the 'critical inquiry' based on Barnett. Third, even considering the majority's argument regarding the elements of aggravated child abuse in light of the 'underlying homicide,' the purported distinctions do not affect the application of the merger doctrine in this case.
"The sentence in Barnett regarding the elements of the underlying felony that the majority cites and relies on as the basis of its decision here is but a mention within an extensive discussion of the legal analysis that supported our holding in Barnett. The majority, itself, quotes extensively from that discussion, and I do so here to illustrate one of the reasons I disagree with the majority's analysis and holding. In Barnett, we stated:
" 'In People v. Ireland, 70 Cal. 2d 522, 450 P.2d 580, 75 Cal.Rptr. 188 (Cal. 1969), the Supreme Court of California addressed whether assault with a deadly weapon could constitute the predicate felony for a felony-murder charge. The appellant in Ireland shot and killed his wife. During the trial, the trial court instructed the jury that it could convict Ireland of felony murder if it determined that he committed the underlying felony of assault with a deadly weapon. Id. In discussing this issue, the Supreme Court of California stated:
*352 " ' "We have concluded that the utilization of the felony-murder rule in circumstances such as those before us extends the operation of that rule 'beyond any rational function it is designed to serve.' ( People v. Washington (1965) 62 Cal. 2d 777, 783, 44 Cal.Rptr. 442, 446, 402 P.2d 130, 134.) To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault-a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. We therefore hold that a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged."
" '....
" 'Conceived in the nineteenth century, the merger doctrine bars the use of the felony-murder rule when the underlying felony directly results in, or is an integral part of, the homicide. See State v. Strauch, 239 Kan. 203, 718 P.2d 613 (1986), and Note, The Merger Doctrine as a Limitation on the Felony-Murder Rule: A Balance of Criminal Law Principles, 13 Wake Forest L. Rev. 369, 377 (1977). Thus, under the merger doctrine, the elements of the underlying felony must be independent of the homicide. See [W. Lafave & A. Scott, Jr., Criminal Law § 7.5 at 622 (1986) ]. We believe that the California Supreme Court's rationale in [ People v.] Ireland [, 70 Cal. 2d 522, 450 P.2d 580, 75 Cal.Rptr. 188 (Cal. 1969),] is sound and that the "merger doctrine" should be applied in felony-murder cases in which the underlying felony is the assault that results in the victim's death.
" 'To read the "clearly dangerous to human life" language in the felony-murder rule as allowing an assault on the homicide victim to be the predicate felony for felony murder would offend the statutory construction of Alabama's homicide laws.'
" Barnett, 783 So.2d at 929-30, quoted in Contreras, 257 So.3d at 343."
257 So.3d at 345 (Welch, J., dissenting) (footnote omitted; emphasis added).
The portion of the Barnett opinion quoted by Judge Welch above continues as follows:
"The Legislature has defined those acts that constitute murder as well as those acts that constitute manslaughter. See §§ 13A-6-2 and 13A-6-3, Ala. Code 1975. If prosecutors could prove murder by proving the intent element of assault as opposed to the requisite mens rea for murder or manslaughter, §§ 13A-6-2(a)(1) and (2), 13A-6-2(b), and 13A-6-3, Ala. Code 1975[,] would effectively be eliminated."
783 So.2d at 930.
Judge Welch continued his dissent in Contreras as follows:
"Thus, contrary to the majority's assertion, the critical inquiry here is whether the aggravated child abuse-the underlying felony-directly resulted in or was an integral part of the homicide. The facts of this case clearly indicate that Contreras's acts of child abuse directly resulted in the homicide and, under Barnett, the merger doctrine applied and prohibited a conviction for felony-murder. Therefore, the trial court *353 erred in instructing the jury on felony-murder.
"Furthermore, the age of the victim and the status of the perpetrator are both relevant as elements of the crime of aggravated child abuse, but they have no impact on whether the merger doctrine applies. The majority's focus on those elements is misplaced. The elements of an underlying assault that merges into a homicide are often distinct from the elements of the homicide, as a review of the cases cited in Barnett readily reveals. For example, in People v. Ireland, [ 70 Cal. 2d 522, 450 P.2d 580, 75 Cal.Rptr. 188 (1969) ], and in State v. Essman, 98 Ariz. 228, 403 P.2d 540 (1965), the underlying felony was assault with a deadly weapon; in Sullinger v. State, 675 P.2d 472, 473 (Okla. Crim. App. 1984), an assault on a corrections officer that resulted in the officer's death was the underlying felony that merged into the homicide.
"The majority's focus on whether the elements of aggravated child abuse were independent of the homicide not only misses the point of Barnett, but it also results in the kind of 'bootstrapping' identified in Ireland that, the Ireland court said, 'finds support neither in logic nor in law.' Barnett, 783 So.2d at 929 (quoting Ireland, 70 Cal. 2d at 529, 450 P.2d at 590, 75 Cal.Rptr. at 198 ). Therefore, the majority's holding, that 'the elements of aggravated child abuse are sufficiently independent from the homicide, and the merger doctrine announced in Barnett does not apply,' 257 So.3d at 341-42, and that the trial court committed no error when it instructed the jury on felony murder, is incorrect on both points.
"The trial court erred when it instructed the jury on felony murder, and Contreras's conviction should be reversed."
257 So.3d at 345 (Welch, J., dissenting) (emphasis added).
Contreras argues that the "merger doctrine," as recognized in Barnett v. State, 783 So.2d 927 (Ala. Crim. App. 2000), applies to preclude a conviction for felony murder that is predicated on the underlying offense of aggravated child abuse. Much of Contreras's argument tracks Judge Welch's dissent.
I agree with the two dissenters below on two key points: (1) "[T]he purported distinctions [drawn by the majority as between aggravated child abuse and felonious assault] do not affect [are not germane to] the application of the merger doctrine in this case." 257 So.3d at 344 (emphasis added); and (2) "[T]he critical inquiry here is whether the aggravated child abuse-the underlying felony-directly resulted in or was an integral part of the homicide." 257 So.3d at 345 (emphasis added).
It is the latter statement that is the test-not the idea formulated by the Court of Criminal Appeals that when the underlying offense has elements that are sufficiently (and that court gave no indication as to what that means) "independent" of the elements of the murder, the merger doctrine will not apply. The two additional elements of aggravated child abuse-the age of the victim and the defendant's status as responsible person-are irrelevant to the application of the merger doctrine. As Judge Welch's dissent points out, there is a difference (as compared to murder) in the elements of all underlying felonies in felony-murder cases. See e.g., State v. Essman, 98 Ariz. 228, 403 P.2d 540 (1965) (assault with a deadly weapon), and Oklahoma, Sullinger v. State, 675 P.2d 472, 473 (Okla. Crim. App. 1984) (assault on a corrections officer), noted in Judge Welch's dissent.
*354 The rule expressed in Barnett is simpler and more straightforward than the rule formulated by the Court of Criminal Appeals in this case with its subjective measurement of the degree of independence of some of the elements of the underlying offense and the elements of murder.[4] Again, Barnett quite simply holds that the merger doctrine applies to bar a conviction for felony murder (but not for murder itself, of course) "when the underlying felony directly results in, or is an integral part of, the homicide." Barnett, 783 So.2d at 930. This test, as expressed in Barnett, clearly is applicable here and should not be overridden by an isolated statement implying that subjectively measured differences in some elements of the underlying offense and the elements of the crime of murder might disqualify an underlying offense for treatment under the merger doctrine. As the authorities quoted by Judge Welch point out, this is not a logical or jurisprudentially sound distinction where the acts that give rise to the underlying offense are the very same acts that also caused the death of the victim. In that situation, i.e., where certain acts are themselves the cause of a victim's death, the legislature has defined different crimes that might be applicable to that death depending on the actor's mens rea, e.g., murder, on the one hand, and a lesser crime, e.g., manslaughter, on the other hand. If those acts are to be the basis for a conviction relating to the victim's death, it is for a fact-finder to assess the evidence as to the mens rea associated with the acts in question and to determine whether those acts were accompanied by the mens rea necessary for a murder conviction or only by that mens rea sufficient for a manslaughter conviction.
Aggravated child abuse is a specially defined category of assault. Admittedly, the legislature intended to punish this type of assault more severely than "ordinary" assault. I see no indication, however, that before the 2016 amendment to § 13A-6-2(a)(3), see note 3, supra, the legislature intended to alter the long-standing construction of Alabama's homicide statutes and the application of the well established merger doctrine. Although the legislature chose to make aggravated child abuse a special brand of assault that is to be punished more severely than other assaults, it did nothing to change the relationship of this assault crime to the crime of murder. It remains the case that the underlying felony in this case "directly results in, or is an integral part of, the homicide" and that "the elements of the underlying felony [are not] independent of the homicide." Barnett, 783 So.2d at 930.
I respectfully dissent.

As discussed below, the Code section has been amended.

See State v. Godsey, 60 S.W.3d 759, 774 (Tenn. 2001) ("Courts have generally declined to hold that the merger doctrine implicates any principle of constitutional law. Instead, courts have viewed the merger doctrine as a principle for discerning legislative intent ...." (citations omitted)).

Section 13A-6-2(a)(3) provides that a person commits the crime of felony murder when "[h]e or she commits or attempts to commit [certain enumerated crimes] or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime ..., he or she, or another participant if there be any, causes the death of any person." (Emphasis added.) At the time of the offense, aggravated child abuse was not an enumerated predicate felony, and Contreras was convicted based on his offense being an "other felony clearly dangerous to human life." Effective May 1, 2016, § 13A-6-2(a)(3) was amended to include, as an enumerated predicate felony, "aggravated child abuse under Section 26-15-3.1."

The well established merger doctrine likewise is simpler and more straightforward than the "absurdity" rule urged by Justice Shaw in his special concurrence.